UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
TEVES REALTY CORP,

        Plaintiff,

  -against-

KARL TERRY, THE CITY OF NEW YORK, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, NEW YORK CITY DEPARTMENT OF FINANCE and NEW YORK CITY PARK VIOLATIONS BUREAU,

        Defendants.
-------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 14-CV-3226 (FB) (VMS)

**BLOCK, Senior District Judge:**

In this diversity action, Teves Realty Corp ("Teves") seeks to foreclose two mortgages on the property of Karl Terry. Both parties move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the motions are denied.

**I**

In November 2009, Terry borrowed $100,000 from Nechadim Corp. The debt was evidenced by a promissory note and secured by a mortgage on commercial property Terry owns in Long Island City, Queens.

1

What happened next is a matter of dispute. In May 2010, Terry executed a second promissory note for $100,000 in favor of Alexander Reich and Searle Selmon. This note was, like the first, secured by a mortgage on Terry's property in Long Island City. The record also includes an "EXTENSION PLUS MODIFICATIONS AND RIDER," which (1) stated that the November 2009 mortgage was "a FIRST lien upon the premises," (2) extended the repayment period for the November 2009 note, and (3) "acknowledge[d] that the money Karl Terry gave back to Alexander Reich was don[e] to stop the payment of interest on this mortgage." Decl. of Harold Schwartz (Aug. 30, 2020), Ex. J. It was signed by Reich, on behalf of Nechadim, and ostensibly by Terry; however, Terry denies signing it.

In any event, Terry stopped making payments in November 2010. In 2014 the notes and mortgages were allegedly assigned to Teves, a New Jersey corporation; Terry disputes this. This action followed.

II

Over the course of this litigation, the parties have proven that they cannot agree on anything. Court-ordered mediation failed, in no small part because Teves's counsel failed to appear for the mediation session, resulting in sanctions. The parties were then unable to agree on a modification to the briefing schedule for their summary judgment motions.

2

It is, therefore, unsurprising that each party has presented the Court with a litany of reasons why it is entitled to summary judgment and why the opposing party is not. The Court addresses each argument in turn.

1. As a threshold matter, Terry argues that Teves cannot collect on the November 2009 note because it has already been repaid. Although there is no evidence of any satisfaction of the note or mortgage, Teves acknowledges that Terry "gave back money" to Reich. It argues, however, that Terry immediately sought another loan of $200,000. That argument, though convoluted, is supported by the "EXTENSION PLUS MODIFICATIONS AND RIDER." As noted, however, Terry denies signing that document. Thus, there is a genuine issue of material fact precluding summary judgment.

2. Terry next argues that Teves cannot prove a valid assignment of either note and mortgage. With respect to the first, he notes that Nechadim was dissolved in January 2011. But "[a] dissolved corporation . . . may continue to function for the purpose of winding up the affairs of the corporation in the same manner as if the dissolution had not taken place." N.Y.B.C.L. § 1006(a). In particular, assets of a dissolved corporation remain with the corporation "until transferred by it in its corporate name." *Id.* § 1006(a)(1). It is undisputed that the assignment of the November 2009 loan was signed by Reich as president of Nechadim and was, therefore, valid.

3

With respect to the second loan and mortgage, Terry correctly asserts that the assignment was signed by Reich but not Selmon. Teves argues, however, that Reich and Selmon were partners. "A partner is the agent of the partnership and his acts may be adopted and enforced by the partnership as its own." *Beizer v. Bunsis*, 833 N.Y.S.2d 154, 156 (2d Dep't 2007) (quoting *Bennett Dairy v. Putney*, 362 N.Y.S.2d 93 (4th Dep't 1974)). Although the loan documents themselves do not reflect that Reich and Selmon were acting as partners, Reich has attested that they were. *See* Decl. of Alexander Reich (Nov. 2, 2020) ¶ 2. In the absence of any evidence to the contrary, Terry cannot dispute that the assignment of the second note and mortgage to Teves was valid.

      3.     Terry next argues that Teves cannot enforce the notes and mortgages because it did not comply with § 1304 of the Real Property Actions and Proceedings Law, which requires "notice to the borrower" at least 90 days before "a lender, an assignee or a mortgage loan servicer commences legal action against the borrower." However, § 1304 applies only to a "home loan." *Id.* It is undisputed that both notes were secured by commercial property.

      4.     Terry next argues that § 1312(a) of New York's Business Corporation Law bars foreclosure. That statute provides that "[a] foreign corporation doing business in this state without authority shall not maintain any action or special

4

proceeding in this state unless and until such corporation has been authorized to do business in this state."

Teves is incorrect that the statute does not apply in federal court. *See Netherlands Shipmortgage Corp. v. Madias*, 717 F.2d 731, 735 (2d Cir. 1983) ("Because jurisdiction rests on diversity, B.C.L. § 1312 precludes the maintaining of an action by an unauthorized foreign corporation not only in the state courts of New York but also in the federal courts located in that state."). But it is correct that it applies only to foreign corporations "doing business" in New York. There is no evidence that Teves has done anything in the state other than attempt to enforce its assigned rights. That does not constitute "doing business." *See id.* ("To come within this section, the foreign corporation must do more than make a single contract, engage in an isolated piece of business, or an occasional undertaking; it must maintain and carry on business with some continuity of act and purpose." (quoting *Int'l Fuel & Iron Corp. v. Donner Steel Corp.*, 242 N.Y. 224, 230 (1926)). *See also id.* ("[T]his standard . . . requires the intrastate activity of a foreign corporation to be permanent, continuous, and regular for it to be doing business in New York.").

Terry further argues that Teves's authorization to do business in its home state of New Jersey was revoked in 2016. Even assuming that is true, a dissolved corporation can, as noted, wind up its affairs.

5

5. Terry next argues that the notes are void because they call for usurious interest, in violation of § 5-511 of New York's General Obligations Law. However, "the defense of usury does not apply where . . . the terms of the mortgage and note impose a rate of interest in excess of the statutory maximum only after default or maturity." *Miller Planning Corp. v. Wells*, 678 N.Y.S.2d 340, 340 (2d Dep't 1998). That is the case here.

6. Terry next argues that interest on the notes should be tolled because Teves delayed enforcing its rights. "In an action of an equitable nature"—such as foreclosure—"the recovery of interest is within the court's discretion." *Dayan v. York*, 859 N.Y.S.2d 673, 674 (2d Dep't 2008). While some New York courts have applied that principle to deny interest to dilatory lenders, there is no evidence that Teves is guilty of such conduct. The assignments are dated January 2014 and this lawsuit was filed only four months later. Much of the subsequent delay was attributable to Terry's delay in answering the complaint. His default was not set aside until January 2018. The remaining delay was typical for civil litigation.

7. Finally, Terry argues that Teves seeks relief outside the pleadings. The body of Teves's complaint refers to the two notes and mortgages discussed in Part I; the prayer for relief then seeks foreclosure of the mortgages. Terry apparently objects that the notes are for $100,000 each, while Teves's motion papers assert a total indebtedness of $180,000. As explained above, there is an

6

issue of fact as to the status of the $100,000 note executed in November 2009. Terry claims that the balance is an "unasserted claim for $80,000" having nothing to do with the $100,000 note executed in May 2010. Def.'s Mem. of Law 16.

Teves explains, however, that the discrepancy was due to a $20,000 check that Terry was given at the closing but did not cash. It is, therefore, clear that Teves seeks to collect on notes totaling $200,000 on their face, but candidly acknowledges that Terry did not retain $20,000 of that amount.

### III

In sum, there are disputed issues of fact regarding (1) the status of the November 2009 note and mortgage, and (2) Teves's standing to enforce the May 2010 note and mortgage. Accordingly, both parties' motions for summary judgment are denied.

**SO ORDERED**.

    /S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 1, 2021